# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## CITY OF RICHMOND V. BELTWAY PROPERTIES, INC., ET AL.

October 8, 1976.

Record No. 750505.

Present, All the Justices.

*William L. Wimbish,* Assistant City Attorney *(Conrad B. Mattox, Jr.,* City Attorney; *James R. Saul,* Assistant City Attorney, on brief), for plaintiff in error.

*Alan G. Fleischer; Waller H. Horsley (Lee F. Davis, Jr.; Robert R. Kaplan; William L. S. Rowe; Christian, Barton, Epps, Brent & Chappell; Hirschler, Fleischer, Weinberg, Cox & Allen; Hunton & Williams,* on brief), for defendants in error.

Harman, J., delivered the opinion of the court.

This writ of error challenges the trial court's holding of invalidity of Ordinance 71-170-146 (the Ordinance), as amended,[1] originally adopted by the City of Richmond (City), acting by and through its City Council, on May 27, 1971. The text of the original ordinance, which added § 37-211.10 to the Richmond City Code, is as follows:

---

[1]: The ordinance was amended and readopted on May 30, 1972, and May 29, 1973, but the text of those amendments is not relevant to the issue here.

"Section 37-211.10. Renting residential living units and renting business, commercial, industrial and like property.

"(a) Every person engaged in the business of or operating a business of renting four or more living units, apartments, houses or dwelling units, whether acting for himself or through an agent, shall pay an annual license tax equal to thirty dollars and one percent of the gross receipts of the business; provided, that no tax shall be assessible against the gross receipts under this section if the person is operating a motel, hotel, or rooming house subject to the lodging tax imposed in Article 5.1 of this Chapter.

"(b) Every person engaged in the business of or operating a business of renting property used for professional purposes or commercial, manufacturing, industrial, or other business purposes, whether he acts for himself or through an agent, shall pay an annual license tax equal to thirty dollars and one percent of the gross receipts of the business.

"For the purposes of this subsection, a person who rents one or more parcels of land or one or more buildings or one or more portions of or spaces in a building or one or more combinations of the foregoing, used and to be used for professional purposes or commercial, manufacturing, industrial or other business purposes shall be deemed to be engaged in the business of renting property used for professional purposes or commercial, manufacturing, industrial or other business purposes."

Two weeks after our decision in *Krauss* v. *City of Norfolk*, 214 Va. 93, 197 S.E.2d 205 (1973), striking down a similar ordinance of the City of Norfolk, the Richmond City Council, on June 25, 1973, repealed the ordinance with the repealer to become effective on December 31, 1973. Thereafter, more than 300 property owners in the City filed applications under Code § 58-1145 challenging the validity of the Ordinance and praying for a refund of the license taxes assessed and paid thereunder. These petitions were consolidated by the trial court so that the common question which they presented, the validity of the Ordinance, could be adjudicated.

The trial court, after a full hearing on this question, held that the Ordinance, as amended, was "drafted and adopted, as well as administered and enforced, with the intent of levying a tax to be determined solely by the application of a numerical test ...

without inquiry as to whether any [property owner] was 'engaged in the business' of renting within the meaning of Virginia's common law." While the Richmond City Code contained a severability provision, the trial court held the invalid portion of the Ordinance was non-severable because the evidence of legislative intent showed that the numerical test was crucial to both the purpose and spirit of the Ordinance.

Here, as in the trial court, the City concedes that the second paragraph of subsection (b) of the Ordinance is invalid under our holding in *Krauss.* The City argues, however, that if this definitional paragraph is severed, as was the definitional paragraph of the ordinance at issue in *Portsmouth* v. *Citizens Trust Co.,* 216 Va. 695, 222 S.E.2d 532 (1976), a legally valid Ordinance would remain imposing a license tax on those persons engaged in the business of renting property under the common law definition and that such a tax could be levied by the City under Code § 58-266.1. Under its view, the City says that the words "four or more" as used in subparagraph (a) of the Ordinance could and should be construed, not as a definition of "engaged in the business of renting" residential property, but to provide an exemption from the license tax for persons engaged in the business of renting if that business consisted of renting fewer than four residential dwelling units. We do not agree. We are of the opinion that subparagraph (a) is substantially equivalent to the definitional paragraph condemned in *Krauss.*

The only issue remaining, therefore, is the correctness of the trial court's ruling that the evidence established a legislative intent which precluded severance of the invalid portion of the Ordinance.

Recently, in *Bd. Sup. James City County* v. *Rowe,* 216 Va. 128, 216 S.E.2d 199 (1975), we had occasion to review the legal principles involved in ascertaining the severability of the invalid portion of a legislative act. There, speaking through Mr. Justice Poff, we pointed out:

"... Absent a severability provision, a legislative act is presumed to be non-severable, and the burden of proving severability is upon the supporter of the legislation. Where a severability provision is included, a legislative act is presumed to be severable, the burden of proving non-severability is on the assailant of the legislation, and the presumption of

severability must be overcome by considerations which establish the clear probability that the legislature would not have been satisfied with what remains after elimination of the invalid parts. Whether there is or is not a severability provision, 'the determination, in the end, is reached by applying the same test - namely, What was the intent of the lawmakers?' [citation omitted] While the presence of a severability provision 'provides a rule of construction which may sometimes aid in determining [legislative] intent . . . it is an aid merely; not an inexorable command.' " [citation omitted] *Id.* at 147, 216 S.E.2d at 214.

Thus, since the Richmond City Code contained an applicable severability provision, the Ordinance is presumed to be severable and the burden of proving non-severability was upon its assailants, the petitioners in the court below.

In *Krauss* the question of severability was never raised before us except on rehearing, when it was too late. In *Portsmouth,* where the ordinance and the amendment thereto were stipulated and the trial court's ruling was upon a demurrer, we found, even in the absence of a severability provision, that there was shown a clear legislative intent which met the test of severability. *Id.* at 699, 222 S.E.2d at 535.

Unlike *Portsmouth,* where the numerical test was incorporated in a separate paragraph, subsection (a) of the Ordinance both defines the business of renting dwelling units and imposes the tax on such rentals.

Here the case is before us on a full record and contains the crucial finding of the trial court that the evidence adduced by the assailants established non-severability. For the City to prevail upon its appeal, we must determine that the trial court erred in this finding of legislative intent.

By statute, Code § 8-491, a trial court's finding will not be set aside unless it is plainly wrong or without evidence to support it. Such a finding is presumed to be correct and is given the same effect as a jury verdict, settling all conflicts in the evidence in favor of the prevailing party. *Reiber* v. *Duncan,* 206 Va. 657, 660, 145 S.E.2d 157, 160 (1965). Under these well established rules, the prevailing parties in the trial court, the appellees here, are entitled to have the evidence viewed in the light most favorable to them.

A review of the evidence presented makes it quite clear that the trial court was justified, if not compelled, to find as it did. As we noted earlier, subsection (a) both defined the business of renting residential units and imposed the tax. The evidence of the city officials who administered the ordinance and the exhibits which were introduced showed conclusively that the numerical test, one commercial unit or 4 residential units, was the test which the City consistently applied in administering the Ordinance from its effective date. In September, 1971, almost four months before the Ordinance became effective, city officials opposed adoption of a proposed amendment to the Ordinance, providing certain exemptions from the tax, on the grounds that the Ordinance was broad based and easy to administer because of the numerical tests it provided. In May, 1972, when a proposal to repeal the Ordinance was under consideration, the City Manager, in a letter to the City Council, reviewed the operation of the Ordinance from its effective date and pointed out that the numerical test and ease of administration of the Ordinance made it a good, inexpensive revenue source and recommended that the tax be continued, not repealed.

On June 11, 1973, the day *Krauss* was decided, the City Manager transmitted a copy of that opinion to each member of the City Council. Two weeks later, on June 25, the Ordinance was repealed by the City Council.

In those circumstances, we hold that the trial court did not err in finding that the appellees had overcome the presumption of severability, so the judgment of the trial court is affirmed.

*Affirmed.*