COURT OF APPEALS OF VIRGINIA


Present:    Judges Haley, Alston and Senior Judge Clements
Argued at Alexandria, Virginia


JOSHUA KENNETH SHORTT

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2435-09-4                  JUDGE ROSSIE D. ALSTON, JR.
                                                    NOVEMBER 9, 2010
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                         Burke F. McCahill, Judge

          Joe S. Ritenour (Ritenour Paice & Mougin-Boal, on brief), for
          appellant.

          Joshua M. Didlake, Assistant Attorney General (Kenneth T.
          Cuccinelli II, Attorney General, on brief), for appellee.


        Joshua Kenneth Shortt (appellant) appeals from his conviction for driving while under the

influence of drugs in violation of Code § 18.2-266.  On appeal, he argues that the trial court erred

when it held:  1) the Commonwealth proved beyond a reasonable doubt that he had the requisite

*mens rea* to justify conviction under Code § 18.2-266; 2) the Commonwealth's evidence failed to

exclude every reasonable hypothesis of appellant's innocence; and 3) appellant failed to establish

the affirmative defense of involuntary intoxication.  The primary issue in this appeal is whether

appellant met his burden to present evidence sufficient to establish the affirmative defense of

"unconsciousness" predicated upon a claim of "sleep-driving."  Because we find appellant failed

to meet his burden to establish this defense, and because the evidence established only voluntary

intoxication, we find the evidence was otherwise sufficient to sustain his conviction.

Accordingly, we affirm appellant's conviction.

------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I.  BACKGROUND[1]

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  Therefore, we must "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)) (emphasis omitted).  So viewed, the evidence was as follows.

On October 7, 2008, at 12:30 p.m., appellant was involved in an automobile accident in Loudoun County.  Appellant was driving east on a four-lane divided highway when his vehicle collided with another vehicle also moving eastbound.  The other driver, George Ryan, pulled his vehicle over to the "breakdown lane" and came to a stop.  After Ryan pulled over, appellant's vehicle again collided with Ryan's vehicle.

Jenny Young, who was a passenger in a car driving on the same highway at the time, witnessed appellant's driving immediately before the accident with Ryan.  Prior to appellant's vehicle's collision with Ryan's vehicle, appellant's vehicle nearly collided with the vehicle in which Young was a passenger.  Appellant's vehicle had accelerated quickly behind Young's vehicle, which was in the right lane, and the driver of Young's vehicle avoided a collision by accelerating in an evasive maneuver.  Appellant then pulled into the left hand lane to pass Young's vehicle.  Young observed that appellant was driving erratically by repeatedly speeding up and slowing down, switching lanes, and braking hard.  She also saw that appellant's

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

passenger side mirror was broken off and hanging down as he drove. Finally, Young noticed that appellant seemed to be talking on his cell phone as he drove, and when he got out of his car after hitting Ryan's vehicle, appellant put on a pair of sunglasses.

Bryan Graham, another driver on the highway around the time of appellant's collision with Ryan, testified at appellant's trial that appellant got extremely close to his vehicle before going around his car. He characterized appellant as a "crazy driver" who repeatedly ran off the road for four to five seconds before coming back on.

After appellant collided with Ryan's car, both vehicles stopped in the "breakdown lane." Young observed appellant get out of his car and described him as unsteady and wobbly. Ryan attempted to communicate with appellant, but could not fully understand what appellant was saying. Ryan also asked appellant a question and received no response.

Officer Susan Patterson of the Purcellville Police Department arrived on the scene shortly after the accident and testified at trial regarding appellant's demeanor. She indicated that appellant was acting strangely, his pupils were dilated, and he was unsteady on his feet and confused. She also testified that the accident was only "a couple miles" from where appellant lived.

Deputy James Kenna of the Loudoun County Sheriff's Office also responded to the scene of the accident and testified at appellant's trial. He indicated that appellant was unsteady on his feet and obviously swaying. In addition, appellant's motions and responses were slow and sluggish. When Deputy Kenna spoke to appellant, he noticed that appellant had slurred speech and bloodshot eyes. Appellant was unable to pass or even complete some of the field sobriety tests that Deputy Kenna directed him to perform.

During Deputy Kenna's investigation of the incident, appellant told Deputy Kenna he had gotten off work that morning and taken some medication before going to bed. Appellant told

Deputy Kenna he had "just gotten up at 1745 hours," was coming from home and going to work, and he thought it was between 7:00 p.m. and 7:30 p.m. At the time of the accident, it was actually approximately 1:00 p.m. Appellant was not wearing a work uniform; he wore sweat pants and slipper-type shoes. Deputy Kenna indicated that appellant, when asked why he was dressed that way, acted confused and was unable to explain his clothes. Deputy Kenna located the sleep aid Ambien in appellant's vehicle. He testified that the medication was prescribed to appellant and that the Ambien pills were 10 milligrams each. He did not indicate whether there were any warnings on the Ambien medication container or label.

A few hours after the collision, appellant's blood was drawn for analysis. Tests found concentrations of 0.14 per liter of blood of Zolpidem (Ambien) and 0.14 per liter of blood Diphenhydramine (Benadryl). There was no presence of alcohol or any drugs other than the Zolpidem and Diphenhydramine in appellant's blood test.

Dr. Carol O'Neal, an employee of the Virginia Division of Forensic Science, testified at appellant's trial as an expert witness in forensic toxicology and pharmacology. She stated that a reading of 0.14 is within the normal range for a therapeutic dose of a 10-milligram Ambien tablet. According to Dr. O'Neal, Ambien's main use is for the treatment of insomnia, and it causes sedation and drowsiness and induces sleep. According to Dr. O'Neal, the drug also causes a loss of balance and coordination, increased reaction time, confusion, disorientation, loss of short-term memory, and slurred speech. Dr. O'Neal also testified that Benadryl has the side effects of sedation, drowsiness, loss of balance, and loss of coordination, which could exacerbate the effects of Ambien.

Furthermore, Dr. O'Neal testified that pharmaceutical medication literature included warnings against "bizarre behavior or sleep-related behavior that may occur" while a person takes Ambien, including sleep-walking and "sleep-driving." She referenced the American

- 4 -

Journal of Medicine's recognition of an inability to perform DUI field sobriety tests as another side-effect of Ambien. Further referencing clinical studies of approximately 3,600 subjects, Dr. O'Neal testified that sleep-walking was listed as a rare occurrence, which was observed in less than one out of a thousand subjects. Finally, she stated that sleep-driving has been recognized as a very rare but actual side effect of the use of Ambien.

Appellant's mother, Leyla Dingess, also testified at the trial. She said she spoke to appellant by telephone on the morning of October 7, 2008, and "everything was fine." However, she stated that when she spoke with her son at approximately 12:15 p.m. that day, he told her he was getting ready to go to work and "there were Mexicans in his house." Dingess became concerned by appellant's strange behavior. When she told appellant that it was not yet time for him to go to work, he acted as if she had not spoken. Dingess testified that appellant was taking Ambien, which had been prescribed to him, and that he had not had any prior incidents such as occurred that day.

In consideration of the evidence presented, the trial court acting as fact-finder rejected appellant's hypothesis of innocence – that he was sleep-driving – and found him guilty of the offense of driving under the influence of drugs in violation of Code § 18.2-266. The trial court held that appellant was not sleep-driving and thus was not unconscious. Furthermore, the trial court held that voluntary intoxication was not a valid defense and the facts were insufficient to show involuntary intoxication. This appeal followed.

- 5 -

I.  ANALYSIS

Appellant presents three issues on appeal.[2]  Because appellant's assignments of error are interrelated and predicated on a claim that he was involuntarily intoxicated, we will consider them under the same analysis.[3]

Appellant argues that the Commonwealth failed to satisfy the *mens rea* requirement of Code § 18.2-266.  Appellant acknowledges that he voluntarily ingested Ambien; however, he argues that he was involuntarily intoxicated.  His argument emphasizes that appellant did not foresee that taking the prescribed dosage of Ambien would render him unconscious and cause him to be so intoxicated that he would "sleep-drive."  Appellant argues that the Commonwealth failed to prove that appellant intended to produce the level of intoxication that resulted, *i.e.*, sleep-driving, at the time he took the Ambien, and thus failed to prove that he had sufficient *mens rea* to sustain a conviction under Code § 18.2-266.  Furthermore, appellant argues that

---

[2] As of July 1, 2010, Rule 5A:12(c)(1) was revised to require a petition for appeal to list "Assignments of Error" instead of "Questions Presented."  Although appellant's petition for appeal was filed before July 1, 2010, appellant stated both "assignments of error" and "questions presented."  Thus, we will refer to the issues raised by appellant as "assignments of error."  The three assignments of error by appellant are:

> I.  The Court erred in ruling that the Commonwealth proved the guilt of the Defendant beyond a reasonable doubt, and specifically that the Commonwealth proved that the Defendant possessed the requisite *mens rea* to justify a conviction of the offense of Driving Under the Influence of Drugs.
>
> II.  The Court erred in ruling that the Commonwealth's evidence excluded each and every reasonable hypothesis consistent with the innocence of the Defendant and was consistent only with his guilt.
>
> III.  The Court erred in ruling that the Defendant failed to establish the affirmative defense of involuntary unconsciousness to the offense charged.

[3] Although appellant's first assignment of error is phrased as a question of the sufficiency of the evidence in support of his conviction, his argument on brief focuses on the trial court's rejection of his affirmative defense of involuntary intoxication.  As such, we approach this assignment of error from this perspective.

because he was unaware of the side-effect of sleep-driving and this side-effect was not foreseeable, he was involuntarily intoxicated and lacked sufficient *mens rea* under the statute.

Involuntary intoxication is an affirmative defense. See Riley v. Commonwealth, 277 Va. 467, 479, 675 S.E.2d 168, 175 (2009). When asserting an affirmative defense, "the burden is on the defendant to present evidence establishing such defense to the satisfaction of the fact finder," id. (citing Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981)), or by "a preponderance of evidence," White v. Commonwealth, 46 Va. App. 123, 129, 616 S.E.2d 49, 52 (2005). Because appellant's involuntary intoxication defense was predicated on his assertion that he was sleep-driving, the burden was on appellant in this case to present evidence sufficient to establish sleep-driving to the satisfaction of the trial court or by a preponderance of evidence.[4]

The analysis in Riley is instructive in the instant case. In Riley, the defendant ingested, before driving, three or four Ambien pills (for which he did not have a prescription), Benadryl, and a pain reliever. 277 Va. at 474, 675 S.E.2d at 172. Thereafter he struck the victim and hit two other vehicles. Id. at 474, 675 S.E.2d at 171-72. The defendant relied on an affirmative defense of unconsciousness, predicated on sleep-driving or sleep-walking. The trial court rejected this theory of defense. Id. at 477-78, 675 S.E.2d at 174. On appeal, the Supreme Court of Virginia found that the trial court did not make a factual finding that the defendant was sleep-walking at the time of the offense. Id. at 481, 675 S.E.2d at 176. Because the defendant's unconsciousness defense was entirely predicated upon the claim he was sleep-walking, the

---

[4] The Supreme Court in Riley did not definitively hold that unconsciousness as a result of sleep-walking is a viable affirmative defense under Virginia law. Riley, 277 Va. at 479-80, 675 S.E.2d at 175 (stating that "unconsciousness" is an affirmative defense, and thus the defendant "had the burden to present evidence, to the satisfaction of the circuit court sitting as the fact finder, that he was sleepwalking at the time he committed the charged offenses"). For the purposes of this opinion, we assume without deciding that sleep-driving is a viable affirmative defense.

Supreme Court held that defendant did not meet his burden of presenting sufficient evidence in support of this defense. Id. at 481, 675 S.E.2d at 176.

Similarly to Riley, the issues raised on appeal by appellant in this case are predicated on the affirmative defense of involuntary intoxication predicated upon sleep-driving. Thus, appellant bore the burden of proving at trial that he was, in fact, sleep-driving. The trial court in this case rejected appellant's theory of defense, finding as a matter of fact that appellant was not unconscious or sleep-driving. It stated, "I find insufficient facts to prove involuntary intoxication, to prove unconsciousness, sleep-walking or sleep-driving." Appellant argues that the evidence presented by the Commonwealth was insufficient for the trial court to conclude that he was *not* sleep-driving or unconscious. Accordingly, appellant suggests that he was involuntarily intoxicated or lacked sufficient *mens rea*. However, this argument inverts the applicable analysis and mischaracterizes the burden of proof on this issue. Because involuntary intoxication is an affirmative defense, it was appellant's burden to prove by a preponderance of the evidence to the satisfaction of the fact-finder that he was sleep-driving. It was not the Commonwealth's burden to prove that appellant was *not* sleep-driving. See Riley, 277 Va. at 479, 675 S.E.2d at 175; Shifflett, 221 Va. at 769, 274 S.E.2d at 310; White, 46 Va. App. at 129, 616 S.E.2d at 52.

Whether or not an affirmative defense has been established is "usually a question for the trier-of-fact." Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988) (holding that "claim of right is an affirmative defense and thus usually a question for the trier-of-fact"). "The trier of fact determines the weight of evidence" in support of a claim of an affirmative defense. Gardner v. Commonwealth, 3 Va. App. 418, 426, 350 S.E.2d 229, 233 (1986) (holding that the trier of fact "determines the weight of evidence in support of a claim of self-defense"). Furthermore, on appeal, findings of fact made by the trial judge are presumed to be correct and

are "given the same effect as a jury verdict, settling all conflicts in the evidence in favor of the prevailing party." Richmond v. Beltway Properties, 217 Va. 376, 379, 228 S.E.2d 569, 572 (1976) (citing Reiber v. Duncan, 206 Va. 657, 660, 145 S.E.2d 157, 160 (1965)). The trial court's findings of fact are given deference, "unless the findings are 'plainly wrong or without evidence to support them.'" Carter v. Commonwealth, 42 Va. App. 681, 686, 594 S.E.2d 284, 287 (2004) (citing Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 235-36 (1998)).

In this case, the trial court reviewed both the Commonwealth's and appellant's evidence and concluded that as a matter of fact appellant was not sleep-driving. Thus, the trial court concluded that appellant failed to establish the affirmative defense of involuntary intoxication. Based on the evidence adduced at trial, we cannot say that the trial court's finding that appellant was not sleep-driving was plainly wrong or without evidence to support it. Appellant drove around two vehicles, those in which Young and Graham were riding, prior to hitting Ryan's vehicle. He also successfully pulled over and stopped his car after striking Ryan's vehicle. Appellant put sunglasses on when he was outside his vehicle on a sunny day and used a cell phone while in his car roadside. Finally, appellant was able to communicate with the investigating officer and, albeit unsuccessfully, attempted to perform field sobriety tests. These facts support the trial court's factual finding that appellant was in fact conscious as he drove. Because appellant's involuntary intoxication argument is predicated on a finding that appellant was sleep-driving, in light of this evidence, appellant failed to carry his burden to establish involuntary intoxication.

As a corollary to his arguments regarding *mens rea* and involuntary intoxication, appellant argues that the evidence did not exclude the reasonable hypothesis that he was unconscious and sleep-driving at the time of the accident.

"'Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.'" Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997)). Where the fact-finder has rejected the hypothesis of innocence, "the trial court's judgment must be affirmed unless it is plainly wrong or without evidence to support it." Sheppard v. Commonwealth, 250 Va. 379, 387, 464 S.E.2d 131, 136 (1995).

In this case, the trial court rejected appellant's alternative hypothesis of innocence, finding as a matter of fact that appellant was not sleep-driving. For the reasons stated above, we cannot conclude that this finding was plainly wrong or without evidence to support it. Thus, appellant's argument fails.

## III. CONCLUSION

Appellant's *mens rea* argument, involuntary intoxication defense, and hypothesis of innocence argument are all predicated on his claim that appellant was unconscious. Because the trial court's finding that appellant was not in fact sleep-driving was not plainly wrong or without evidence to support it, the trial court did not err in rejecting appellant's arguments. For the foregoing reasons, we affirm appellant's conviction.

Affirmed.