COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Beales
Argued by teleconference

DEVONIA BURGESS

MEMORANDUM OPINION[*] BY
v.        Record No. 0946-20-1        JUDGE ROBERT J. HUMPHREYS
MARCH 16, 2021

ANWAR BURGESS


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
William S. Moore, Jr., Judge

Carmelou G. Aloupas (Aloupas Law, P.L.L.C., on brief), for
appellant.

No brief or argument for appellee.


On July 24, 2020, following a hearing, the Circuit Court for the City of Portsmouth

("circuit court") modified the custody and visitation order granted by the Portsmouth Juvenile &

Domestic Relations District Court ("J&DR court") on December 8, 2015.  On appeal, Devonia

Burgess ("mother") assigns error to the circuit court's ruling that it could modify the J&DR court

order with respect to visitation without finding a material change of circumstances had occurred.

Additionally, she argues that the circuit court erred by not considering the best interests of the

children when it entered a modified visitation order.  Mother contends that because the circuit

court did not hear evidence from mother or her witness before modifying the order, it could not

have considered the children's bests interests as required by Code § 20-124.3.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

Mother and Anwar Burgess ("father") divorced in August of 2015.  The parties share three minor children.  On December 8, 2015, the J&DR court entered a custody and visitation order regarding the three children.  At the time, mother was living in Portsmouth and father was stationed at Fort Bragg, North Carolina, where he served in the United States Army.  The December 8, 2015 order awarded mother primary physical custody of the children with "reasonable visitation to the father" and granted joint legal custody to both parents.

On October 11, 2015, father remarried Laketa Burgess ("stepmother").  Father also retired from military service and relocated to Fredericksburg, Virginia.

When mother and father could not agree on the terms of visitation, father sought modification of the December 8, 2015 order by the J&DR court on September 20, 2018.  On May 8, 2019, the J&DR court entered an order that kept physical and legal custody the same but granted a specific visitation schedule to father.  On May 15, 2019, father appealed the May 8, 2019 J&DR court order to the circuit court, primarily arguing that his retirement from the military and relocation to Fredericksburg warranted modification of custody and visitation.  Father requested that the circuit court enter an order that awarded him primary physical custody of all three children and set specific dates for visitation with mother.

On January 9, 2020, the circuit court heard arguments on father's appeal, including testimony from both father and stepmother.  At the conclusion of father's case-in-chief, mother made a motion to strike, arguing that father's evidence failed to demonstrate a material change in circumstances that justified modifying the order.  Before ruling on mother's motion to strike, the circuit court heard from the guardian *ad litem* who testified that the evidence "favored the mother."

The circuit court granted mother's motion to strike, and no additional evidence was taken. The circuit court then stated, "But I think there needs to be some visitation changes." Father objected, saying, "I think that . . . ruling then requires a determination that there has been a material change of circumstance that justifies a modification of the prior order, which would be the December 2015 order." The circuit court overruled the objection and instructed the parties to each draw up a proposed order that awarded specific visitation times and dates to the father.

On May 26, 2020, the circuit court heard arguments regarding each party's proposed visitation schedule. Mother objected to entry of a visitation schedule order, arguing that because the circuit court had ruled on January 9, 2020, that there was no material change in circumstances, it could not modify the existing custody and visitation order. Over her objection, the circuit court entered a new order that contained a set visitation schedule. The circuit court also ordered the parents to follow specific communication and information-sharing guidelines and mandated that the child pick-ups and drop-offs occur at a specific gas station. The visitation order was entered by the circuit court on July 24, 2020.

Mother timely appealed following the entry of the July 24, 2020 order.

## II. ANALYSIS

### A. Standard of Review

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28 (1990). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id. at 328. "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id. (citations omitted).

On appeal, we review the evidence in the light most favorable to the prevailing party in the circuit court. See Hughes v. Gentry, 18 Va. App. 318, 321-22 (1994). A lower court's decision in an *ore tenus* hearing "is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." Id. at 322 (quoting Venable v. Venable, 2 Va. App. 178, 186 (1986)). Further, we view the evidence in the light most favorable to the party who prevailed below. See City of Richmond v. Beltway Properties, Inc., 217 Va. 376, 379 (1976).

## B. Lack of Visitation Order

Mother argues that because there was no material change in circumstances, the circuit court was not permitted to modify the existing visitation order. Her argument is based upon a false premise because the December 8, 2015 order is not a visitation order within the meaning of Code § 20-124.2(A). That statute provides that "the court shall provide prompt *adjudication*, upon due consideration of all facts, of . . . visitation arrangements . . . prior to other considerations arising in the matter." See Code § 20-124.2(A) (emphasis added). The original J&DR court order of December 8, 2015 stated, "[j]oint legal custody is granted to Anwar Burgess, father, and Devonia Burgess, mother, with primary physical custody to the mother, and reasonable visitation to the father."

Statutory interpretation requires us "'to construe the law as it is written,' and we are also mindful that '[t]o depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret.'" See Town of Leesburg v. Giordano, 276 Va. 318, 323 (2008) (alteration in original) (first quoting Hampton Roads Sanitation Dist. Comm'n v. City of Chesapeake, 218 Va. 696, 702 (1978); then quoting Faulkner v. Town of South Boston, 141 Va. 517, 524 (1925)). We defer to the plain meaning of statutory language because we presume that the legislature carefully and intentionally chose its words when enacting a statute. See Jackson

v. Fidelity and Deposit Co. of Maryland, 269 Va. 303, 313 (2005). "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." Id.

Code § 20-124.2(A) states, "a court shall provide prompt adjudication of . . . visitation arrangements . . . ." Adjudication commonly means "[t]he legal process of resolving a dispute; the process of judicially deciding a case." Adjudication, Black's Law Dictionary (11th ed. 2019). The J&DR court that crafted the 2015 custody order did not judicially decide when and where each parent could visit the children, and thus, never adjudicated the specifics of visitation. The J&DR court simply left it to the parties to determine the matter. In sharp contrast, it did adjudicate which parent should receive primary physical custody and decided that both parents should retain legal custody.

Mother argues that, under Keel v. Keel, 225 Va. 606 (1983), the visitation schedule ordered by the circuit court was a modification of the December 8, 2015 order. The test for determining whether modification of a child custody or visitation award is appropriate has two prongs: first, the circuit court must determine that a material change in circumstances occurred and second, it must determine that changing the custody and visitation order would be in the best interests of the children. See id. at 611. Although Keel was decided in the context of custody determinations, this Court has since held that the two-part test applies equally to visitation award modifications. See Duva v. Duva, 55 Va. App. 286, 291 (2009). Accordingly, usually, both prongs of the Keel test must be satisfied before modifying a prior visitation award order. See id.; Keel, 225 Va. at 611-12.

Here, the original December 8, 2015 J&DR court order provided no details or guidance beyond awarding "reasonable visitation to the father." That order did not set forth or otherwise adjudicate a visitation schedule for the parents to follow but instead delegated the matter to the parties who, ultimately, could not agree. On September 20, 2018, father sought specific changes

to custody and visitation that resulted in a new J&DR court order on May 8, 2019, which, for the first time, actually adjudicated the issue of visitation. On May 15, 2019, father appealed the May 8, 2019 J&DR court order to the circuit court, rendering it a nullity under the principles of *de novo* review. See Code § 16.1-296 ("From any final order or judgment of the juvenile court . . . an appeal may be taken to the circuit court . . . from the entry of a final judgment, order or conviction and shall be heard *de novo*.").

Therefore, when father's appeal reached the circuit court, there was no prior judicially-adjudicated visitation schedule in effect in this case to serve as a subsequent basis for a determination of whether a material change had occurred since such adjudication. Thus, the visitation schedule ordered by the circuit court on July 24, 2020 was not a modification since there was no prior court-ordered visitation schedule to modify. Upon appeal, the circuit court did not amend the father's visitation rights but rather judicially determined, for the first time, what parenting arrangement constituted "reasonable visitation." Accordingly, the circuit court's July 24, 2020 order did not require application of the Keel test. The first actual visitation order in this case was entered on July 24, 2020, when the circuit court crafted a parenting schedule that set forth specific visitation times.

There is a common expectation in society, further memorialized in our laws and jurisprudence, that parents will act with their children's best interests in mind. If parents disagree over what arrangement is in the children's best interests, then a court is tasked with determining what will best serve any children and circuit courts are granted broad discretion to make decisions necessary to protect and to promote the children's best interests. See Albert v. Albert, 38 Va. App. 284, 294 (2002). The mere phrase "reasonable visitation" as it was used in the December 8, 2015 J&DR court order lacks the specificity necessary to later determine any material change in circumstances since, definitionally, *any* subsequent modification of visitation

would be unreasonable. Here, in the absence of a judicially-approved visitation plan to modify, the circuit court was necessarily required to determine "reasonable visitation" with specificity and promulgate an appropriate schedule. For these reasons, we conclude that the circuit court did not err in setting a visitation schedule for father in this case.

### C. Best Interests

Mother also contends that the circuit court erred when it reduced her parenting time without considering the best interests of the children pursuant to Code § 20-124.3 because it did not hear evidence from her at the January 9, 2020 hearing. Mother's principal argument is that the circuit court ordered a change in visitation after only hearing evidence from the father and, by so doing, did not consider the children's best interests.

Code § 20-124.3 mandates, "[i]n determining best interests of a child for purposes of determining custody or visitation arrangements . . . the court shall consider the following . . . ." The statute then lists ten detailed factors that the circuit court must consider to determine what arrangement will be in the child's best interests. Code § 20-124.3.

Mother's second assignment of error alleges that the circuit court did not consider the children's best interest pursuant to Code § 20-124.3 based solely upon the fact that mother did not present any evidence. A circuit court's decision will not be set aside on appeal unless it is plainly wrong or without evidence to support it. Code § 8.01-680; Farley, 9 Va. App. at 328.

At the close of the father's case, mother made a motion to strike, stating, "I don't believe that Mr. Burgess has established that there's been a material change in circumstances since the last order, a material change that actually impacts the best interests of the children." The circuit court agreed and did not hear any further evidence save for testimony from the guardian *ad litem*. However, after granting the motion to strike, the court stated, "But I think there needs to be some

visitation changes. It's in *the best interest of the child* for the mother to have primary [physical custody] with joint [legal] custody to the father." (Emphasis added).

Mother argues that because the circuit court struck father's evidence, there was no evidence that could support a determination of the best interests of the children for visitation purposes. However, it is important to note the context of the circuit court's action. Father sought a change in custody and visitation, asserting a material change in circumstances. In striking father's evidence, the circuit court specifically limited its ruling to a failure on the part of father to carry his burden to show a material change in circumstances. For the reasons stated above, that ruling by the circuit court does not affect the ability of the court to judicially establish an initial visitation schedule, nor does it render the circuit court's decision plainly wrong regarding the best interests of the children.

The record reflects that the circuit court explicitly considered the best interests of the children. There simply is no requirement in Code § 20-124.3 that both parties must present evidence before the circuit court may determine whether a modified award is in the best interest of a child or children. A lack of evidence by one party in an award modification hearing, in and of itself, does not signify that a circuit court did not consider the best interests of the children.

Neither can it be accurately said that the circuit court's decision was without evidence to support it. Both explicit and implicit evidence in the record indicate that the circuit court was weighing what visitation arrangement would serve the bests interests of the children.[1] The circuit court heard evidence from both father, stepmother, and the guardian *ad litem* about the children's

---

[1] Code § 20-124.3 states, "The judge *shall* communicate to the parties the basis of the decision either orally or in writing. Except in cases of consent orders for custody and visitation, *this communication shall set forth the judge's findings regarding the relevant factors set forth in this section*." (Emphasis added). Mother does not assign error to the circuit court's communication of its decision to the parties. Consequently, we do not address in this appeal whether the trial court's communication of its decision to the parties complied with Code § 20-124.3.

grades, housing, schools, and behavior, and other factors before making its decision.  After hearing

the evidence, the circuit court questioned counsel for father, inquiring:

> So you think the court should uproot these children that are eleven,
> eight, and six that have been living with their mother since they
> were born and been well taken care of apparently—they're doing
> well in school, there's no problems—and uproot them and send
> them to Fredericksburg because the father's retired and has a nice
> house and a nice wife as well?

The circuit court was clearly examining the evidence to discern what custody and visitation

award would best serve the children and their relationship to both parents.

### III. CONCLUSION

For these reasons, we hold that the circuit court did not err in ordering a visitation

schedule and considered the best interests of the children in doing so.

Affirmed.